FOLEY *v.* GRAND RAPIDS GASLIGHT CO.

INJURY TO EMPLOYÉ—OBVIOUS DANGER.

> Plaintiff had been employed by a gaslight company for several years in laying service pipes and occasionally in taking up street mains. The superintendent of the company started plaintiff and others at putting in a main, and then went away, and the plaintiff thereafter left temporarily. On his return he found the trench, about five feet deep, fully dug, and, without any directions, got down into it, to put in a re-ducer, when the earth gave way, and he was injured. Plaintiff and his witnesses testified that the sides of the trench looked perfectly sound. The company had shoring, which the men might use as needed. *Held*, that the fact that shores were not put in did not entitle plaintiff to recover, as the danger was as apparent to him as to any one.

Error to Kent; Perkins, J. Submitted April 2, 1901. Decided July 19, 1901.

Case by Michael Foley against the Grand Rapids Gaslight Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Stuart & Barker*, for appellant.

*McKnight & McAllister* and *James A. Lombard*, for appellee.

MOORE, J. The plaintiff recovered a judgment of $2,000 against defendant for injuries received by him while at work for defendant in a trench. The case is brought here by writ of error, defendant insisting a verdict ought to have been directed in its favor.

The plaintiff is a man of mature years. He had, according to his testimony, been in the employ of the defendant the greater part of the year for nearly four years, when he was injured. During three summers he was employed in

laying service pipes. The defendant says he was fore-man of his gang engaged in that work. He says he was not foreman, but timekeeper; that there was no foreman. The record shows he was paid 25 cents a day more than the other men in the gang. The laying of service pipe required an opening to be made at the street main, where the main was tapped, and a small pipe connected with it, and the small pipe was then conveyed, through a trench much smaller and shallower than those in which the street mains were laid, to the building which was to be supplied with gas. During the summer of 1897 the plaintiff and the men with whom he worked were upon two or three occasions employed to take up street mains.

In August, 1897, the plaintiff, with a number of other men, according to the testimony of the plaintiff, was set to work running a four-inch main. The superintendent showed them where to start the work, and then went to some other portion of the city. Plaintiff worked until about 3 o'clock, and then went over to Madison avenue, after something he wanted to make the connection. Upon his return the ditch was completed. It was about five feet deep. Without any direction from any one, the plaintiff got into the ditch, for the purpose, with the aid of his brother-in-law, Mr. Palmer, of putting in a reducer. He stooped down to blow up a bladder that was to be used to shut off the pressure of gas, while Mr. Palmer started to loosen a plug, when the earth gave way, and plaintiff received injuries. He testified that, before he got into the ditch, he looked at it, and both banks appeared all right; "there seemed to be a good bottom and well dug, and it seemed to be all right." Mr. Palmer also testified, in response to an inquiry by the judge:

"I did not consider it any danger at all. I did not think there was any danger whatever connected with it in getting down in that ditch. I thought no more of it than I would getting off this chair. I could not help but look at the sides of the trench, because our work was right there in the ditch; but the idea of danger did not come to me at all."

Mr. Wilson, a witness for plaintiff, also testified that he looked at the sides of the trench. "They looked to me perfectly sound and solid; did not observe any danger of their caving in."

The above is all the testimony upon that subject. After the superintendent set the men at work, he did not return to where they were at work until after the accident. The plaintiff also testified:

"I never raised any objection to working in these mains when I was sent to work there. I imagined it was as safe as any place else. I felt as though if I was working for them I should do what they told me, whether it was working on the main pipes, or on the service, or down in the shops, or in the factory, or anywhere."

It is claimed the plaintiff, as to the danger of putting in mains, was an inexperienced man, and should have been warned of the danger, and that the defendant should have put in shores against the sides of this trench, and in that way protected the plaintiff. It is said the case of *Ostrander* v. *City of Lansing*, 111 Mich. 693 (70 N. W. 332), sustains the verdict in this case. An inspection of that case will show it is easily distinguishable from this one. Were it not for the fact that the accident happened, there is not a particle of testimony in the case indicating the situation was such as to require shoring. The record discloses that the defendant company had braces, plank, and shoring, which the men might use as needed; that they were not often needed, but, when they were, the foreman of the gang attended to the sending and getting them, unless the superintendent was there. Under the record, as made, it cannot be said that this man, who had worked in trenches for three summers, though most of the time in service trenches, was an inexperienced man, who was not as capable of judging of the dangers of going into a trench but four and one-half or five feet deep as any one. The danger he incurred was as obvious to him as to any one. It was one of the hazards of the business in which he was engaged. Lamentable as was the acci-

dent, it did not afford a cause of action against defendant. *Illick* v. *Railroad Co.*, 67 Mich. 632 (35 N. W. 708); *Balle* v. *Leather Co.*, 73 Mich. 158 (41 N. W. 216); *Powers* v. *Lumber Co.*, 92 Mich. 533 (52 N. W. 937); *Vincennes Water-Supply Co.* v. *White*, 124 Ind. 376 (24 N. E. 747); *Texas & Pac. R. Co.* v. *French*, 86 Tex. 96 (23 S. W. 642); 1 Bailey, Pers. Inj. §§ 501–504.

Judgment is reversed.    No new trial.

The other Justices concurred.