OCIE L. CLAYTON V. CHICAGO, ROCK ISLAND & GULF RAILWAY COMPANY ET AL.

No. 7639. Decided July 9, 1941.
Rehearing overruled October 8, 1941.
(154 S. W., 2d Series, 453.)

L. D. Eakman, of Montague, and T. B. Coffield, of Bowie, for plaintiff in error.

Where evidence shows that injured employee was a minor and had worked only about twenty minutes with the defective instrument furnished him by his employer, and which caused his injury, the question of whether or not such inexperienced minor assumed the risk incident to his employment was one for the jury. Peck v. Peck, 99 Texas 10, 87 S. W. 248; Orange Lbr. Co. v. Ellis, 105 Texas 363, 150 S. W. 582; 29 Tex. Jur. 164, 314, 381.

*Benson & Benson*, of Bowie, *Jenkins Garrett* and *Walker Smith & Shannon*, of Fort Worth, for defendant in error.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

While Ocie Clayton was working as a section hand on a railroad, using a crowbar to pull spikes from the crossties, the bar, because of its defective condition, slipped and severely bruised the index finger on his left hand. He sued the railway company for damages. The trial court held that the plaintiff assumed the risk incident to his injury, and instructed a verdict for the defendant. The judgment was affirmed by the Court of Civil Appeals. 129 S. W. (2d) 693.

The material facts are shown by plaintiff's own testimony, and are without any substantial dispute. The substance of his testimony, when reduced to a narrative form, is:

"I am 20 years old. I was employed by the Chicago, Rock Island & Gulf Railway Company on October 23, 1938, as a laborer. I had been for several years prior to that time earning my living as a common laborer. I had never worked on a railroad before. When I went to work I was knocking rocks from from under the rails with a foot adz. I had been working for the railroad company about ten days prior to that date. I had been working about two hours the day that I was injured. They were getting behind pulling spikes, and I was told by the straw boss to quit knocking rocks from under the rails and to begin pulling spikes. You pull spikes with a crowbar. A crowbar is about six feet long, one and one-half inches in diameter, and has a fork at the end like a claw hammer to set under the head of the spike when you pull spikes. I got a crowbar off the work car that had been placed there for the workmen. I didn't examine the crowbar when I picked it up. I was in a hurry. The boss was hurrying us. After they called

me from knocking rocks from under the rails, I went to pull spikes, and I had pulled about a rail; about the length of a rail, and I came to a spike that the bar wouldn't pull; I couldn't get it under it to hold and the straw boss drove the bar under the spike and we couldn't pull it and he told me to go on down the line, and I pulled the next two or three, and then I came to one and the bar slipped off and I mashed my finger. The assistant foreman tried to drive the bar under the head with a maul, but couldn't make it take hold and told me to go on and he would get another bar to pull that spike. I went on down the line pulling spikes. I had pulled two or three more when I got hurt. I was trying to pull another spike. The bar first caught on the spike where I got hurt. I was working with both hands. I am left-handed, and I throwed my weight on the bar and it slipped off and my weight went down and caught my hand between the bar and the tie-plate. The index finger on my left hand was injured. I had never used a crowbar to pull spikes before that morning. I was not given any instructions as to how to use it. The claws on the crowbar were worn smooth just like a worn-out hammer. It wouldn't hold the spike. The spike had to be up an inch or two before it would pull it. When I first put the bar under the spike it held, but when I put my weight on it, it fell. I had used the bar about twenty minutes before I was injured. I didn't examine the bar when I first got it, but noticed it wouldn't catch a spike head as it should, and on a spike it wouldn't pull. I did notice that it was worn and slick and wouldn't catch a spike like it ought to. Some of the spikes it would pull all right; if the spikes were down like they should be it wouldn't pull them. I noticed it was in a worn, dilapidated condition at the time. I noticed that immediately. It worked pretty much on the same plan as claw hammer, except the claw hammer isn't nearly so large. There is a heel immediately behind which forks and rests on the tie, and by putting weight on the upper end of the bar the spikes are drawn from the tie. They didn't tell me how to pull spikes. Anyone would know how to pull them. I knew how to pull spikes. I didn't examine the crowbar when I first picked it up."

**1, 2** We are of the opinion that the trial court and the Court of Civil Appeals correctly decided the case. It is conceded that the plaintiff at the time of his injury was engaged in interstate commerce, and that as a consequence the defense of assumed risk was available under Federal Employers' Liability Act. U. S. C. A., Title 45, sec. 54. From the evidence it is ap-

parent that the crowbar was a rather simple tool, and that, while plaintiff had never used a crowbar before, yet, because of its simplicity, the method of using it to pull spikes was well known to plaintiff. It is also apparent that the defect in the tool was well known to the plaintiff. He may not have known that the tool was defective when he first picked it up, but he testified that he immediately discovered that it was worn smooth and would not hold on a spike. He acquired all this information before he attempted to pull the spike where he was injured. While he did not anticipate that his finger would be mashed in the manner that it was by the bar slipping off the spike, he did know that the claws would slip off the spike if he placed his weight on the other end of the bar. As a matter of common knowledge he must have known that if he put his weight on one end of the bar and the other end slipped off the spike, the bar would necessarily fall to the ground with great force, and that if his fingers were around the bar, they would be mashed. This was but a natural consequense that would necessarily result from facts well within his knowledge. Since he had full knowledge of the defect in the tool and of the danger incident to the use thereof, he must be held to have assumed the risk by continuing to use it. Gulf, H. & S. A. Ry. Co. v. Lempe, 59 Texas 19; Texas & Pacific Ry. Co. v. French, 86 Texas 96, 23 S. W. 642; Gulf, W. T. & P. R. Co. v. Smith, 83 S. W. 719 (Error refused) ; 39 C. J. 807, 810; 18 R. C. L. 683, 691.

The judgment of the Court of Civil Appeals, which affirms the case, is affirmed.

Opinion adopted by the Supreme Court July 9, 1941.

Rehearing overruled October 8, 1941.